Christian H. Dribusch (507021)
The Patroon Building
Five Clinton Square
Albany, NY 12207
(518) 436-1662

Attorney for Debtor

RECEIVED
SEP 2 - 2009
OFFICE OF THE BANKRUPTCY JUDGE
ALBANY, NY

RECEIVED & FILED
SEP 2 2009
OFFICE OF THE BANKRUPTCY CLERK
ALBANY, NY

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:

**FRIAR TUCK INN OF CATSKILLS, INC.,**

Debtor.

**NOTTINGHAM VILLAGE DEVELOPMENT CORP.**

Debtor.

Chapter 11
Case No.: 09-13312

~~Jointly Administere~~d

Chapter 11
Case No.: 09-13311

## DEBTOR'S MOTION FOR AN ORDER AUTHORIZING THE USE OF CASH COLLATERAL AND FOR DEBTOR IN POSSESSION LENDING

**Friar Tuck Inn of Catskills, Inc..** (the "Debtor"), by and through its counsel, *Christian H. Dribusch*, respectfully shows to the Court as follows:

1. On September 2, 2009 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of New York.

2. Since the Petition date, the Debtor has continued in the management and operation of its business and assets as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108. No trustee or examiner has been appointed herein.

3. This Court has jurisdiction of this application pursuant to 28 U.S.C. §§ 157 and 1334.

4. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

5. Venue of this proceeding and the instant application in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6. The Debtor makes this application pursuant to 11 U.S.C. §§ 105 and 507 (a)(3).

## BACKGROUND

7. As of the Petition date, the Debtor continues in its operations as a resort, spa and convention center business in Catskill, New York. The Debtor's business has 500 guest rooms, 52,000 square feet of exhibit spaces for trade shows and banquet and conference facilities for 10 to 2,000 attendees.

8. The Debtor urgently requires working capital to maintain its operations and business during the Chapter 11 process pending the sale of assets pursuant to either a private sale or auction. In the absence of available working capital, the Debtor will be forced to cease its operations and be constrained to discontinue its service to customers. Any significant disruptions of the Debtor's ordinary course of operations due to the lack of sufficient funding would be devastating at this critical juncture. The inability of the Debtor to obtain sufficient operating liquidity and to meet its post-petition obligations on a timely basis may result in a permanent and irreplaceable loss of business causing a loss of value to the detriment of the Debtor and the creditors in the Debtor's estate.

9. The Debtor has determined, in the exercise of its sound business judgment, that it is critical to it reorganization efforts to obtain a DIP facility that provides the Debtor with the ability to finance the operation of its business during this Chapter 11 case in accordance with the

terms of a DIP Loan Agreement in accordance with the terms, provisions of and conditions of the term sheet attached hereto. The proceeds of the DIP facility will be used for the Debtor's post-petition working capital needs.

10. Prior to the Petition Date, the Debtor engaged in good faith extensive arm's length negotiations with its primary lender. The negotiations culminated in the attached term sheet to provide post-petition financing to the Debtor on the terms and conditions set forth therein. The proceeds of the DIP Loan will be used in accordance with the DIP Term Sheet and Interim DIP Order.

11. The Debtor's working capital needs can only be satisfied if the Debtor is authorized to use credit under the DIP Loan to fund its ongoing operations. The credit under the DIP loan will enable the Debtor to continue operating, so that it can pay its employees and operate its business in the ordinary course as conducted immediately prior to the Petition Date in order to preserve the value of its assets and enterprise for the benefit of all parties in interest. The availability of credit under the DIP Loan will provide the Debtor the ability to continue to operate and maximize the value of its assets until a sale of certain assets may be achieved for the benefit of the estate.

12. The terms and conditions of the DIP Loan are fair and reasonable and were negotiated by the parties in good faith and at arms' length. Accordingly, Ulster County Savings Bank, the secured lender, should be accorded the benefits of Bankruptcy Code §364(e) with respect to such agreement.

13. Pursuant Federal Rule of Bankruptcy Procedure Rule 4001(c) the Debtor requests that the Court enter an Order authorizing the Debtor to obtain the DIP Loan and grant the secured lender adequate protection liens and administrative super priority claims.

14. The Debtor has an urgent need for cash to continue to operate. The Debtor will be immediately and irreparably harmed absent authorization from the Court to obtain secured credit, as request, on an interim basis pending a final hearing on the Motion. The availability of such interim loans will provide necessary assurance to third parties of the Debtor's ability to meet its near-term obligations.

15. The Debtor is unable to obtain unsecured credit or debt allowable as an administrative expense under Bankruptcy Code §503(b)(1) or any other acceptable terms, in an amount sufficient and readily available to maintain ongoing operations. Absent interim post-petition financing, the Debtor's objective in proceeding under Chapter 11 while maintaining its value for the benefit of creditors and employee may fail without a fair opportunity to achieve the purposes of the Chapter 11. In these circumstance, the granting of the relief requested is warranted.

16. No previous motion for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtor respectfully requests that the Court enter an Order granting the relief requested herein, and such other and further relief as may be just and proper.

Dated this 2nd day of September, 2009

By: _____
**Christian H. Dribusch**
The Patroon Building
Five Clinton Square
Albany, NY 12207
(518) 436-1662

Reviewed and approved:

_____
Rosario Caridi, Chief Executive Officer
Friar Tuck Inn Of Catskills, Inc.

# TERM SHEET FOR DEBTOR IN POSSESSION FINANCING
# REVISED 9/1/2009

ULSTER SAVINGS BANK intends to extend to FRIAR TUCK INN OF THE CATSKILLS, INC. and NOTTINGHAM VILLAGE DEVELOPMENT CORP. a Debtor in Possession Loan not to exceed the sum of $625,000.00 upon the following terms:

1. Interest Rate: Prime plus 300 basis points (3%).

2. Advances: All advances to be made only upon request from Thomas Fucito, CPA, supported by documentation setting forth in detail the purposes for which such advances are to be used.

3. Advance Approval: All advance requests require the express approval by Ulster Savings Bank.

4. Advance Limitations: Ulster Savings Bank shall not advance more than $180,000.00 per month, exclusive of advances for Thomas Fucito's accounting services not to exceed the sum of $45,000.00, and advances for Debtor's Bankruptcy Counsel's legal services not to exceed the sum of $40,000.00.

5. Note Obligors: Friar Tuck Inn of the Catskills, Inc., Nottingham Village Development Corp. and Friar Tuck Resorts, Inc.

6. Security for Loan: Loan to be secured by a lien on all assets of Friar Tuck Inn of the Catskills, Inc. and Nottingham Village Development Corp, subordinate only to existing mortgage liens held by Ulster Savings Bank and liens of real property taxes due and owing, and to be further secured by a second mortgage in the hotel, resort and conference center premises owned by Friar Tuck Inn of the Catskills, Inc. and situate at Route 32 in the Town of Catskill, County of Greene and State of New York, which second mortgage shall be subject only to the prior lien of a first mortgage upon said premises held by Ulster Savings Bank, all to be approved by the US Bankruptcy Court for the Northern District of New York.

7. Due Date: The Note and all sums advanced pursuant thereto shall be fully due and payable on November 30, 2009.

8. Deed: If this Note together with a Consolidated Note given by Friar Tuck Inn of the Catskills, Inc. and Nottingham Village Development Corp. to Ulster Savings Bank in the principal sum of $3,400,000.00 and dated November 24, 2006 and a Note given by Nottingham Village Development Corp. to Ulster Savings Bank in the principal sum of $800,000 and dated November 24, 2008 are not paid in full on or before November 30, 2009, Friar Tuck Inn of the Catskills, Inc. and Nottingham Village Development Corp. shall deliver to Ulster Savings Bank or its assignee or nominee, a deed of the premises mortgaged in the mortgages which secured said notes and which premises are all the real property owned by said corporations and situate at Route 32 and Route 23A in the Town

of Catskill, County of Greene and State of New York. The Mortgages shall not merge into said deed. Furthermore, said deed shall not be in full satisfaction of the indebtedness to Ulster Savings Bank pursuant to said notes.

9. Guaranty: The Note and all advances are to be guaranteed by Rosario Caridi and Ricky S. Caridi.

10. Documentation: The Note and Mortgage are to be documented on the Ulster Savings Bank usual forms for its Business Line Credit Note, Mortgage, Assignment of Rents and Leases and Guarantees.

11. Title Insurance: The mortgage shall be insured by a loan policy of title insurance satisfactory to bank's counsel.

12. Opinion of Counsel: Borrowers' Counsel shall provide an Opinion Letter satisfactory in form and substance to bank's counsel stating that the aforementioned Debtor in Possession Note and the Mortgage securing same are valid and enforceable obligations of the borrowing entities.

12. Expiration: This offer shall expire at the close of business on September 10, 2009 if the Borrowers have not obtained a First Day Order from the US Bankruptcy Court Northern District of New York and have not fully executed all mortgage documents by such expiration date and time.