**Christian H. Dribusch (507021)**      **Hearing Date:**      **October 7, 2009**
The Patroon Building                    **Hearing Time:**      **10:30 a.m.**
Five Clinton Square                     **Hearing Location:**   **James T. Foley Courthouse**
Albany, NY 12207                                                **445 Broadway**
(518) 436-1662                                                  **Albany, NY 12207**

Attorney for Debtors

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11<br>Case No.: 09-13312 |
| **FRIAR TUCK INN OF CATSKILLS, INC.,** | |
| Debtor. | |
| **NOTTINGHAM VILLAGE DEVELOPMENT CORP.** | Chapter 11<br>Case No.: 09-13311 |
| Debtor. | |

**DEBTOR'S MOTION FOR AN ORDER: (A)(i) ESTABLISHINGAND APPROVING BIDDING PROCEDURE PURSUANT TO 11 U.S.C. 105(a) AND 363 AND (ii) SCHEDULING DATE FOR PUBLIC AUCTION SALE AND AUTHORIZING AND (B) APPROVING PUBLIC AUCTION SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S PERSONAL AND REAL PROPERTY PURSUANT TO 11 U.S.C. 363(b)(1) AND RULES 2002 AND 6004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FREE AND CLEAR 0F ALL LIENS, CLAIMS AND ENCUMBRANCES, OUTSIDE THE ORDINARY COURSE OF BUSINESS**

Friar Tuck Inn Of Catskills, Inc. And Nottingham Development Corp., Debtors in

Possession (the "Debtors"), by and through undersigned counsel, respectfully submit this motion

(the "Sale Motion") for the entry of Orders: (A)(i) establishing and approving bidding

procedures pursuant to 11 U.S.C. §105 and §363 in connection with the public sale (the "Auction

Sale") of substantially all of the Debtors assets (the "Assets") and  (ii) scheduling dates for the

Auction Sale; and (B) authorizing and approving the Auction Sale of the Assets, pursuant to 11

U.S.C. 363(b)(1) and (f) and Rules 2002 and 6004 of the Federal Rules of Bankruptcy

Procedure, free and clear of all liens, claims and encumbrances, outside the ordinary course of

business; and (C) granting such other and further relief as the Court deems just and proper.

## JURISDICTION

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §157(b)(1) and

§1334(b).

2.      This proceeding is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A), (M),

(N), and (O).

3.      Venue of this Motion is proper under 28 U.S.C. §1408 and §1409.

4.      This Motion is predicated upon 11 U.S.C. (hereinafter "Bankruptcy Code")

§105(a) and §363(b)(1) and (f) and Rules 2002 and 6004 of the Federal Rules of Bankruptcy

Procedure (hereinafter "FRBP").

## INTRODUCTION

5.      On September 2, 2009 (the "Petition Date"), the Debtor filed a voluntary petition

for relief under the Bankruptcy Code in the United States Bankruptcy Court for the Northern

District of New York (the "Court").

6.      As of the Petition date, the Debtor continues in its operations as a resort, spa and

convention center business in Catskill, New York.  The Debtor's business has 500 guest rooms,

52,000 square feet of exhibit spaces for trade shows and banquet and conference facilities for 10

to 2,000 attendees.

7.      No trustee or examiner has been appointed herein.

8.       On September 2, 2009, the Court issued an interim Order (the "Interim DIP

Order") approving certain Debtor in Possession lending by and among the Debtors and Ulster

Savings Bank (the "DIP Loan Agreement").  The DIP Loan Agreement, among other things,

secures the personal property of the Debtors.

9.      As of the Petition Date, the Debtors are indebted to Ulster Savings Bank (the

"Primary Secured Lender") in the approximate sum of $3,500,000.00 plus continually accruing

interest, fees, costs and expenses.  The indebtedness to the Primary Secured Lender is secured by

a first mortgage covering the real property.

10.     In addition to the Primary Secured Lender and the outstanding real property taxes

the following have security interests and/or judgments on the Debtors real estate as set forth in a

September 2, 2009 title commitment:

      a.   Hess Energy New York Corporation - $265,873.85+

      b.   Sysco Food Services of Albany, LLC - $60,860.24

      c.   Sherwin-Williams Company – $2,449.52+

      d.   Severn Trent Environmental Services, Inc. -$2,486.40+

11.     In addition to the secured indebtedness outlined above, the Debtors are indebted

to unsecured creditors in the aggregate amount of approximately $550,000.00 in the case of Friar

Tuck and $150,000.00 in the case of Nottingham as of the Petition Date.

12.     As of the Petition Date, the Debtors continue their operations.

13.     As a result of the economic downturn, the Debtors have determined that they can

no longer continue operations.   Therefore, the Debtors have determined that it is in the best

interest of the Debtors and all parties in interest herein for the Debtors to actively market the

Assets for sale.

14.     As discussed more fully below, it is the Debtors intention to sell the Assets as

soon as possible at a public auction in order to maximize the recovery for the benefit of the

Debtors respective estates.   Notwithstanding this proposal, the Debtors hereby reserve the right

to continue pursuing and soliciting offers for the Assets as a going concern prior to the date of

the Auction Sale, and hereby further reserve the right to adjourn or reschedule the Auction Sale

with the consent of the Primary Secured Lender.

15.     The Assets proposed to be sold include all right, title and interest of the Debtors in

real property and personal equipment located at and associated with the operation of the Debtors

respective businesses.

16.     The Debtors believe that a sale conducted in advance of the winter season is likely

to render a higher return for the Debtors estates that if it were delayed to the winter months

because of the additional difficulty, delay and expense which would be attendant to continuing to

operate during inclement weather.

17.     Finally, the Debtors ability to borrow under the DIP Loan Agreement expires on

November 30, 2009 (the "Termination Date"), at which point the Debtors will have no funds

available to collect and preserve the Assets for the benefit of their creditors or their estates.

Given the nature of the Assets, there are significant carrying costs associated with maintaining

the Assets.

18.     In light of all of the above, it is imperative that the Assets be sold as soon as

possible but in any event well in advance of the Termination Date.

## THE BANKRUPTCY CODE 363 AUCTION SALE

19.     Pursuant to this Sale Motion, the Debtors are requesting the Court grant an

Order: (A) approving the bidding procedures and (B) scheduling the date for the Auction Sale,

and (C) approving and authorizing the Auction Sale pursuant to Bankruptcy Code 363(b)(1) and

(f) and FRBP Rules 2002 and 6004.

A.      **Relief Requested:  Approve Bidding Procedures.**

20.      The Assets to be sold at the Auction Sale consists of substantially all of the

Debtors real and personal property, both tangible and intangible, including but not limited to, all

of the Debtor's real property, machinery and equipment, and trade names.  However, the sale

does not include the Debtors cash or accounts receivable.

21.      In accordance with FRBP 6004(f)(1), sales of property of the estate outside the

ordinary course of business under Bankruptcy Code 363 may be effectuated by private sale or

auction.   The Debtors believe good cause exists to expose the Assets to sale at auction "as is,

where is" without representation or warranty of any type, nature, kind or description, and to

approve the procedures proposed to conduct the Auction Sale.

22.      The Debtors seek to retain the services of  AuctionAmericaRealty.com  (the

"Auctioneer") to advertise and market the Assets for sale at the Auction Sale.   The Debtors are

in the process of preparing, and will be filing soon with the Court, an application seeking to

appoint the Auctioneer.   The  Auctioneer's compensation for conducting the Auction Sale is

based upon a surcharge to be paid by the purchaser of the Assets (the "Buyer's Premium").  The

Buyer's Premium is calculated by multiplying the total purchase price of the successful bidder by

ten percent (10%).

23.      The Debtors reserve the rights to offer the Assets for sale in bulk, in lots or

individually, as appropriate, pursuant to terms, conditions and procedures prepared by the

Auctioneer in connection with the Auction Sale (the "Bidding Procedures").   The Debtors

reserve the right to modify the Bidding Procedures and adjourn or reschedule the Auction Sale

subject to the written consent of the Primary Secured Lender.  A sample of proposed bidding

procedures terms and conditions are annexed hereto as Exhibit "A."

24.     The Auction Sale will be conducted live on site and perhaps with live internet bidding.   The internet bidding will enable prospective bidders throughout the world to participate, in real time, against buyers at the Auction site.

25.     Following the Auction Sale, the Debtors will file with the Court an Auctioneer's report setting forth the results of the Auction Sale.

26.     The Debtors believe the Auction Sale and proposed Bidding Procedures will promote active bidding from seriously interested parties and will render the best and highest offer reasonably available for the Assets.   The proposed Bidding Procedures will allow the Auctioneer, on behalf of the Debtors, to conduct the Auction in a controlled, fair and open fashion that will encourage participation by financially capable bidders who demonstrate the ability to purchase the Assets.

**B.     Relief Requested:  Approve Proposed Schedule Date for the Auction**

27.     The Debtors propose that the Assets be sold at public auction at the Debtors site of operation at 10:00 a.m. on October 27, 2009.   Inspection of the Assets will be available to buyers prior to the Auction Sale.

28.     The Auctioneer will advertise the Auction Sale by mailing, faxing, and electronically mailing detailed fully-illustrated auction brochures to several thousand prospective bidders in the United States, Europe, Asia, Africa, and Australia.    The Auctioneer will supervise inspections by prospective bidders at the site.

29.     Based upon the forgoing, the Debtors respectfully submit that scheduling the Auction Sale for 10:00 a.m. on October 27, 2009 will allow sufficient time to fully advertise the sale to prospective bidders and allow the Debtors to conduct and complete the Sale prior to inclement weather months of winter.

**C.     Relief Requested:  Approve and Authorize the Auction Sale.**

30.     At the sale hearing, the Debtor will request that the Court issue an Order

authorizing the Debtor to conduct the Auction Sale and further approving the Auction Sale in all

respects (the "Sale Order").

31.     Bankruptcy Code 363 governs the Debtors ability to use, sell, or lease property of

the bankruptcy estate other than in the ordinary course of the debtor's business.   Bankruptcy

Code 363(b) provides, in relevant part, as follows:  The trustee, after notice and a hearing, may

use, sell, or lease, other than in the ordinary course of business, property of the estate.

32.     In order to approve the sale of property outside the ordinary course of business,

the bankruptcy court must "find from the evidence presented before him at the hearing a good

business reason to grant such application." *Committee of Equity Security Holders v. Lionel*

*Corp. (In re Lionel Corp.)* 722 F.2d 1063, 1071 (2nd Cir. 1983).

33.     The burden of establishing the valid business purpose for the sale of property of

the estate outside the ordinary course of business falls upon the debtor.  *Lionel*, 722 F.2d at 1070-

71.   However, once the debtor articulates a rational business justification, a presumption

attaches that the decision was made on an informed basis, in good faith and in the honest belief

that the action is in the best interest of the debtor.  *Official Committee of  Subordinated*

*Bondholders v. Integrated Resources, Inc. (In re Integrated Resources, Inc.),* 147 B.R. 650, 656

(S.D.N.Y. 1992).

34.     A sale pursuant to Bankruptcy Code 363 is necessary to prevent further

deterioration of the Assets.  Unless the Assets are sold expeditiously, it is likely that the Debtors

and the estates will suffer a sharp decline in the amount of sale proceeds which may be derived

from the Assets as the Debtors will need to surrender the Assets to the Primary Secured Lender

after November 30, 2009 if the Assets are not sold by that date.  Prior to and since the Petition

Date, the Debtors have attempted to market the Assets but to date have been unable to solicit an

acceptable offer form a prospective purchaser.  Therefore, the Debtors believe the only way to

prevent further decline in the Assets and to maximize recovery for the estates is to conduct a sale

pursuant to Bankruptcy Code 363.

35.    Bankruptcy Code Section 363(f) provides that a debtor may sell property of the

bankruptcy estate free and clear of any interest in such property of an entity other than the estate

under certain circumstances including, without limitation, such entity consents or such entity

could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such

interest.

36.    Other than the liens of the Primary Secured Lender, the Debtors believe that there

are the following liens, claims, encumbrances, security interests, judgments and the like

(collectively, the "Encumbrances") against the Assets:

    a.  Hess Energy New York Corporation - $265,873.85+

    b.  Sysco Food Services of Albany, LLC - $60,860.24

    c.  Sherwin-Williams Company – $2,449.52+

    d.  Severn Trent Environmental Services, Inc. -$2,486.40+

37.    Upon information and belief, the Primary Secured Lender consent to the proposed

Auction Sale of the Assets pursuant to Bankruptcy Code 363 provided that:

    a.  the bidding procedures are approved at the Interim Hearing in a form

       acceptable to the Primary Secured Lender;

    b.  the Order approving the Auction Sale and Bidding Procedures are in form and

       substance acceptable to the Primary Secured Lender; and

c.  the sale proceeds up to the amount owned the Primary Debtor are paid over to

the Primary Secured Lender in accordance with the DIP Loan Agreement and

Interim DIP Order.

38.      As it pertains to the remaining Encumbrances, to the extent that there are excess

proceeds from the Auction Sale net of Expenses, real property taxes, and the amounts due the

Primary Secured Lender, such liens will attach to the proceeds to the priority, nature, extent, and

validity of such Encumbrances are otherwise enforceable under applicable law against the

Debtors with the balance of due, if any, to be treated as general unsecured claims of the

bankruptcy estate.

39.      Based upon the foregoing, Bankruptcy Code 363(f) is satisfied, and the Debtor

respectfully requests that it be authorized to sell the Assets free and clear of any and all

Encumbrances which may be asserted, with the Encumbrances to attach to the proceeds of sale

(less the selling expenses as provided in the Debtors agreements with the Auctioneer), until the

proceeds are paid to the Primary Secured Lender in accordance with the requirements of the DIP

Loan Agreement and Interim DIP Order.

**WHEREFORE**, the Debtors respectfully request that the Court enter Orders:

(a)  Establishing and Approving the Bidding Procedures for the Auction Sale of the

Debtors Assets pursuant to 11 U.S.C. 105 and 363;

(b)  Scheduling the date for the Auction Sale;

(c)  Authorizing and Approving the public Auction Sale of substantially all of the

Debtors real and personal property pursuant to 11 U.S.C. 363(b)(1) and (f) and FRBP

Rules 2002 and 6004,  free and clear of liens and encumbrances, outside the ordinary

course of business; and

(d)  Granting such other and further relief as the Court deems just and proper.

Dated this 15th day of September, 2009

By: */s/ Christian H. Dribusch*

**Christian H. Dribusch**
The Patroon Building
Five Clinton Square
Albany, NY 12207
(518) 436-1662

Reviewed and approved:

*/s/ Rosario Caridi*

**Rosario Caridi,** Chief Executive Officer
**Friar Tuck Inn Of Catskills, Inc.**

AuctionAmericaRealty.com

## <u>NOTICE TO ALL BIDDERS</u>

The information included in the packets, brochures and any other materials is a summary of information available from a number of sources, most of which have not been independently verified. This summary has been provided only for the use of prospective bidders at the Public Real Estate Auction. It is supplied for whatever assistance it may provide in answering questions; however:

**SUCH INFORMATION AND OPINIONS ARE SUPPLIED WITHOUT ANY WARRANTIES OR REPRESENTATION, EITHER EXPRESSED OR IMPLIED WHATSOEVER.**

Prospective bidders are advised to avail themselves of the tax and land records of the related city or around and the State in which the auction sale is conducted, and to make an inspection of the premises on their own behalf, consulting whatever advisors they may feel appropriate.

The Property for sale will be auctioned in an "AS-IS, WHERE IS" condition and neither the Auction Company, nor the Seller of their respective agents make any express or implied warranties of any kind. The description and conditions listed in this and any other advertising materials are to be used as guidelines only and are not guaranteed.

The information included in the packets, brochures and any other materials is a summary of information available from a number of sources, most of which have NOT been independently verified. Such information and opinions are supplied without any warranties or representation, either expressed or implied whatsoever.

www.AuctionAmericaRealty.com -  516.632.5065 -  2 Penn Plaza, Suite 1500, New York, NY 10121

Exhibit "A"

**AuctionAmericaRealty.com**

## SUMMARY TERMS

- **Deposit**:  Due at time of auction (see individual properties for the deposit amount). DEPOSIT MUST BE IN THE FORM OF A CERTIFIED CHECK. Check is to be made out to the name of the bidder and at auction winning bidder shall endorse such check to auction company to be held in escrow, **Deposit must be increased to ten percent (10%) of the contract sale price within three (3) business days of the sale.**

- **10% Buyer's Premium** shall be added to the amount of the winning bid to cover auctioneer and broker fees. Example; A $200,000 bid at auction will result in a $220,000 contract price.

- 30 Day Settlement

- Seller must deliver insurable title, free of any liens or financial encumbrances.

- Property sold "As-Is, Where Is" with no warranties implied or given.

- Buyer to pay all closing costs where allowed by law.

- BROKER'S CO-OP WELCOMED – 2%

- See detailed terms, sample contract of sale, bidding procedures, and broker co-op registration form in rear section of the information package.

Note: The above terms are only a summary of the complete terms. Please see the "Terms and Conditions" section for complete terms.

4

The information included in the packets, brochures and any other materials is a summary of information available from a number of sources, most of which have NOT been independently verified. Such information and opinions are supplied without any warranties or representation, either expressed or implied whatsoever.

www.AuctionAmericaRealty.com -  516.632.5065 -  2 Penn Plaza, Suite 1500, New York, NY 10121

Exhibit "A"

# AuctionAmericaRealty.com

## *Terms & Conditions*

NOTICE TO BIDDERS: READ THIS AND ALL SALES INFORMATION AS TO THE PROPERTY, REVIEW THE CONTRACT, AND LISTEN CAREFULLY TO ALL ANNOUNCEMENTS BEFORE SUBMITTING A BID. YOU ARE BOUND BY THE PROVISIONS OF THESE TERMS AND CONDITIONS, THE CONTRACT, AND THE ANNOUNCEMENTS. THE SALE OF THIS PROPERTY IS "AS IS" WITHOUT ANY PROMISE, REPRESENTATION OR WARRANTY OF ANY NATURE, EXPRESSED OR IMPLIED, OTHER THAN AS MAY BE SUBMITTING A BID AND IN BUYING THE PROPERTY.

IDENTIFICATION:
All visitors to the property ("bidder(s)") are required to give their full name, address, and phone  number, and to read the Contract of Sale and these Terms and Conditions prior to inspecting the property and/or bidding at the auction. The undersign bidder hereby acknowledges and agrees that it has done so.

CONTRACT:
In the event you as a bidder submit a bid that is accepted, you ("buyer") shall be required to promptly sign the Contract of Sale, a form of which has been provided to you and is available at the auction. These Terms and Conditions of Participation are included in the Contract of Sale and are made a part thereof.

DEPOSIT:
Buyer is required to make an initial non-refundable deposit of $_____ in the form of certified check or guaranteed funds (reasonably acceptable to auctioneer) at the time of sale. Buyer is then unconditionally obligated to increase such initial non-refundable deposit amount to an amount equal to (10%) percent of the purchase price within 3 business days of the auction date. You acknowledge and agree that the initial deposit plus any additional amounts subsequently paid by you as a deposit (the "non-refundable deposit") shall be nonrefundable. The initial deposit and any money subsequently paid by bidder as a deposit will be held by the auctioneer or its attorney in a non-interest bearing attorney escrow account. If you fail to increase the deposit within the above-referenced time frame or otherwise default under the Contract of Sale, seller shall be entitled to retain the deposit (among other remedies available to the seller in accordance with the remedies set forth herein and the escrow agent holding such shall accordingly be duly authorized to release the money from escrow to seller or as agent otherwise deems appropriate (in agent's discretion). Further, in the event a closing is set by seller pursuant to the Contract of Sale and buyer fails to close thereunder or seller delivers a notice of default and a bidder fails to promptly cure such default, buyer shall have the right to commence an action to have the escrow agent submit the deposit to a counter of competence jurisdiction. In the event buyer fails to bring such action within a reasonable time period (no more than 90 days after the date set for closing or the date of delivery of the default notice), the escrow agent is hereby authorized and instructed to release the deposit to seller. Release of such non-refundable deposit to seller or otherwise will, however, be at the discretion of the escrow agent. Seller and buyer jointly and severally agree to indemnify such agent against any claims or damages agents suffer in connection with such agency.

BUYER'S PREMIUM
*A buyer's premium ("BP") of ten percent (10%) will be added to the amount of successful bidder's high bid at auction.* The total purchase price included in the Contract of Sale shall therefore be 10% higher than the amount actually bid at auction by the successful bidder. Bidder hereby expressly agrees to use its best efforts and take all action necessary to ensure that at closing where the bidder or any affiliate of bidder is the purchaser, Auction America will receive its commission equal to the buyer's premium.

16

The information included in the packets, brochures and any other materials is a summary of information available from a number of sources, most of which have NOT been independently verified. Such information and opinions are supplied without any warranties or representation, either expressed or implied whatsoever.

# AuctionAmericaRealty.com

## *Terms & Conditions – cont'd*

NO WARRANTY: the property is being sold by seller in "AS IS, WHERE IS" condition, without warranty of any nature, either expressed or implied, including, but not limited to, the nature and/or condition of the property, its acreage and usage, and zoning (other then any representations and/or warranties required as a matter of law). The property and its sale is subject to all conditions, easements, agreements, covenants of record, and other restrictions, if any. The sale of property may be, if applicable, subject to the Residential Property Disclaimer Statement and to the Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards for Housing Sales (as to which, if applicable, bidder hereby agrees to waive the opportunity to conduct a risk assessment or inspection for the presence of lead based paint and/or lead based paint hazards). And such other disclosures as may be required by law, all of which have been provided by seller and should be obtained by the buyer from the auctioneer prior to the auction.

CLOSING; TITLE; TAXES AND CHARGES:
Unless otherwise noted in the literature or announced at auction, the title seller will convey will be good and insurable with a reputable title insurance company. Seller shall convey the property free and clear of any liens or monetary encumbrances. Prior to auction, all bidders should determine the existence of any encumbrances. No buildings department or other municipal violation shall be deemed to be momentary encumbrance, unless the municipality has filed a lien in connection with the corrections thereof. Closing shall take place within thirty (30) days of the sale date in the county where the property is located. Time is of the essence with respect to the closing date being within 30 days of the date of the Contract of Sale or any mutually agreed extensions thereof. All expenses associated with the property such as property taxes and water charges shall be adjusted as of the closing date. Bidder has the right to select a title company, settlement company, escrow company, mortgage lender, and title lawyer of bidder's own closing. Beginning on the 30th day after the sale date, interest of 1% per month (to be accrued on a daily basis) will be paid by the buyer on the unpaid amount. Time is of essence. Upon payment in full of the purchase price at closing, the seller is to convey title as aforesaid by special warranty deed. *All charges incidental to the transfer of title, including without limitation the cost of any recordation tax or any state or local transfer tax are to be paid by the buyer to the extent allowed by law.*

NOTICE:
All announcements made the day of sale take precedence over any prior written information, these Terms and Conditions, or any verbal information that may have previously been provided. All information contained in this package, any advertisements, in any oral communications, or in announcements made the day of sale was obtained from sources believed to be accurate. However, no warranty or guarantee, expressed or implied, is intended or made. Neither Auction America, their respective affiliates, agents or representatives (collectively, "Auction America"), nor the seller make or have made any representation or warranty with respect to the accuracy, correctness, or completeness of the information provided to any bidder regarding the property, the contents or meaning of such information, or the valuation of the property. Each bidder must independently investigate and confirm any information or assumptions on which such bidder's bid(s) are based. Any decision to purchase or not to purchase the property is the sole and
independent business decision of the bidder. Neither Auction America, nor the seller shall be liable for any errors or incorrect information, and bidder herby agrees that it waives all claims and has no recourse or cause of action of any nature against Auction America, or seller (or any of their representative agents) arising from any information provided OR relating in any way to the "As Is, Where Is" status of this sale. The property is offered for sale to qualified purchasers without regard to race, color, religion, sexual orientation, marital status or national origin.

17

The information included in the packets, brochures and any other materials is a summary of information available from a number of sources, most of which have NOT been independently verified. Such information and opinions are supplied without any warranties or representation, either expressed or implied whatsoever.

**AuctionAmericaRealty.com**

## Terms & Conditions – cont'd

CANCELLATION OR WITHDRAWAL FROM SALE:
Auction America has the right to reject any bid or raise which, in its opinion, is not commensurate with the value of the offering. In the event of any dispute between bidders, Auction America may determine the successful bidder or re-offer and re-sell the property in dispute. Should there be any dispute after the sale, Auction America's record of final sale be conclusive.

LIABILITY OF AUCTIONEER:
Auction America is not the seller of the property. Auction America is an independent contractor that has been retained by the seller to assist in the sale of the property by auction. All claims of any nature that a bidder has, if any, are solely against the seller. All bidders (including buyer) and seller agree that Auction America (including without limitation, the escrow agent) shall not be held responsible or liable in any way , and hereby release Auction America, to the greatest extent permitted by law, from any and all claims of any nature relating to the property, the conduct of the sale, the condition of the property, and the seller's inability or refusal to comply with the provisions of the information, these Terms and Conditions, or the Contract of Sale. In the event a party files a claim against Auction America, and in the event Auction America is the substantially prevailing party as to such claim, then in that event Auction America shall be entitled to recover from the bidder the full amount of the attorney's fees Auction America incurs in connection with the claim. If there is a dispute as to the disposition of the deposit, and Auction America or its attorney is either sued for the deposit or Auction America or its attorney determines in its sole discretion that the deposit needs to be interpleaded in court, then in that event bidder and seller shall be jointly and severally responsible for all fees and costs incurred by Auction America in connection therewith.

RIGHTS AND SELLER'S REMEDIES:
If a bidder fails to execute the Contract of Sale at the amount bid at auction, fails to complete settlement as provided herein or defaults in any matter under these Terms And Conditions, the bidder shall be responsible to seller and Auction America for the damages set forth below as liquidated damages (and not as a penalty) as seller's and Auction America sole remedy. Further, if a bidder fails to execute the Contract of Sale at the amount bid at auction, fails to complete settlement as provided herein or default in any manner under these Terms and Conditions, the seller and Auction America, in addition to retaining the deposit (if applicable) and being entitled to collect liquidated damages (and any interest and cost of collection with respect thereto) may undertake any and all legal and equitable actions, including without limitation, a suit for specific performance. At no time after a default by bidder shall seller be restricted from selling the property in any manner it deems appropriate. Seller and /or Auction America (as applicable) shall also be entitled to recover from bidder all attorneys' fees and cost of litigation (including expert fees) incurred in connection with any claim between buyer and seller (and/or Auction America) where seller (and/or Auction America) is the substantially prevailing party. Buyer herby acknowledges and agrees that for the purpose of any damage calculation, fair and accurate measure of damages shall be 25% of the amount of buyer's highest bid at auction. In addition to any damages owed to seller, failure to execute a Contract of Sale after submitting a successful bid at auction, or failure to close as required by a validly executed Contract of Sale shall result in buyer being liable to Auction America for an amount equal to the BP plus all of Auction America's out of pocket fees associated with the auction, as liquidated damages such amount also being a fair and accurate measure of actual damages). Buyer acknowledges and agrees that to satisfy a portion of such liquidated damages Auction America and seller shall be entitled to retain the non-refundable deposit being held by the escrow agent.

18

The information included in the packets, brochures and any other materials is a summary of information available from a number of sources, most of which have NOT been independently verified. Such information and opinions are supplied without any warranties or representation, either expressed or implied whatsoever.

# AuctionAmericaRealty.com

## *Terms & Conditions – cont'd*

JURISDITION; VENUE; JURY TRIAL WAIVER:

The respective rights and obligations of the parties with respect to the Terms and Conditions of Sale, the Contract of Sale, and the conduct of the auction shall be governed and interpreted by the internal laws of the State of New York (without regard to principles of conflicts of laws). By bidding at an auction, whether present in person or by agent, by written bid, telephone or other means, the bidder shall be deemed to have consented to the sole and exclusive jurisdiction of the state and federal courts sitting in New York. In the event of any litigation in which Auction America is defendant, the parties hereby consent and agree that the sole venue in which such claim shall be brought shall be in City of New York. The parties further agree to waive any right that they might have to a jury trial in connection with any dispute arising out of or relating in any way to these Terms and Conditions, the Contract of Sale, or the property, and the parties herby acknowledge that, in so doing, they are waiving a valuable right.

MISCELLANEOUS:

These Terms and Conditions are herby incorporated into the Contract of Sale. The person signing these Terms and Conditions and the Contract of Sale individually represents that, if he/she is acting on behalf of an entity, that he/she is fully and validly authorized to act on behalf of the entity and that the entity is a presently operating entity that is financially capable of fulfilling the Terms and Conditions and the Contract of Sale. Auction America is hereby explicitly named as a third-party beneficiary hereunder. Buyer represents that it is purchasing the property for business or commercial purposes.

I have read and understand and agree to these Terms and Conditions:

Agreed to and Accepted by:

_____          _____
Signature                                 Print Name

_____          _____
Address                                   Phone Number

_____          _____
City, State, Zip                          Date


Agreed to and Accepted by:

_____          _____
Signature                                 Print Name

_____          _____
Address                                   Phone Number

_____          _____
City, State, Zip                          Date

19

The information included in the packets, brochures and any other materials is a summary of information available from a number of sources, most of which have NOT been independently verified. Such information and opinions are supplied without any warranties or representation, either expressed or implied whatsoever.

www.AuctionAmericaRealty.com -  516.632.5065 -  2 Penn Plaza, Suite 1500, New York, NY 10121

Exhibit "A"